UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Bryce Palar,
    Plaintiff   )
        )
    v.   )
        )   Case No. 11-4039
Blackhawk Bancorporation Inc., d/b/a Blackhawk   )
Bank and Trust,   )
    Defendant   )
        )

## REPORT AND RECOMMENDATION

Now before the Court are the Plaintiff's motion for sanctions (#34) and the Defendant's Motion to Strike (#35) The District Judge has referred these matters to me for a Report and Recommendation. The motion is fully briefed and I have carefully considered the arguments of the parties. As stated herein, I recommend that the motion be denied.

### I. BACKGROUND

Plaintiff Bryce Palar was employed by Blackhawk Bank and Trust as a loan officer. In this action, Palar alleges that the Bank failed to pay him completely for all the hours he worked, in violation of the Fair Labor Standards Act, and that his employment was terminated in retaliation for filing a claim for unpaid wages. A further violation of the Act resulted when the Bank allegedly failed to pay him all final compensation that was due and owing at the time he was fired. Finally, he alleges that the Bank violated the Fair Credit Reporting Act by terminating his employment based on a consumer credit report without providing Plaintiff a copy of that report and informing him of his statutory rights.

Discovery in this case was to conclude on August 20, 2012, over six months ago. Plaintiff has now filed a motion for sanctions, based in part on Defendant's alleged destruction of

1

electronic evidence and handwritten notes and in part on Defendant's violation of the Illinois Personnel Record Review Act.

## II. PLAINTIFF'S MOTION

### A. DESTRUCTION OF ELECTRONIC EVIDENCE

In December 2010, about six weeks after Mr. Palar was fired, his attorney notified Blackhawk Bank (the Bank) of his claims and requested that the bank "take immediate steps to preserve evidence related to Mr. Palar's claim. This applies especially to electronic evidence, including email." Counsel for the Bank provided its client with a "detailed letter with instructions on appropriate electronic data preservation" that same month.

In February of 2012, the Bank implemented a new server host for email. This was a business decision, allowing the Bank's emails to be encrypted, a function unavailable on the old host. At that time, all email users at the Bank were instructed to check email folders to verify that all email was stored in Outlook, the software used to access email at the Bank. This software did not change with the new host; employees continued to compose, send, receive and manage emails in Outlook. Employees had from February until September of 2011 to assure that all emails were saved in Outlook. Any email so saved was preserved in its native format.[1]

During discovery, Palar served a Request for Production of Documents on the Bank, asking in pertinent part for "all communications, including electronic communications, voicemails, emails … relating to Mr. Palar." The Bank responded: "See documents attached to these responses. Also, see attached CDs, PALAR 322-325 and attached documents PALAR 326-466." The referenced documents were provided.

---

[1] " Native format" is the format of a file as it was created by specific computer software. The format is delineated by the extension following the file name. For example, documents generated using Microsoft Word show the extension ".doc" after the file name. See, The Sedona Conference Glossary: E-Discovery and Digital Information Management (Third Edition).

2

Palar's counsel followed up on the document production, seeking electronic versions of the documents in their native format. Defense counsel responded in writing on February 27, 2012, as follows:

> [P]lease note that Blackhawk switched to a new hosted exchange platform for email in February of 2011. The previous hosting account, Network Solutions, was retained until September 9, 2011. Users were instructed to check their Network Solutions email boxes to verify that all email was stored in Outlook if needed or deleted if no longer needed. Thereafter, the Network Solutions accounts were deleted. All relevant emails have been produced…"

Palar asserts that, despite the Bank's notice of his claims, it "took actions that resulted in the destruction of electronic copies of the emails pertaining to Mr. Palar." She asserts that receiving documents in their native format is crucial because "it contains metadata[2] that shows when the document was created, whose computer created it and who was on the copy list."

There are any number of problems with Plaintiff's position on this issue. First, production of an electronic document in "native format" does not result in production of "metadata." Those are two very different concepts. Most courts dealing with questions of production of metadata have held that metadata need not be produced unless specifically requested. See, *Autotech Technologies Ltd Partnership v Automationdirect.com, Inc.*, 248 FRD 556, 559 (NDIL 2008) (citing cases). Misunderstanding the distinction between these concepts renders much of Plaintiff's argument insignificant.

Second, during the time allotted by the scheduling order for discovery, Plaintiff never requested that the Bank produce metadata. Her first request was for emails; her follow up request was for emails in their native format. Considering that the Bank has produced the requested

---

[2] "Metadata" is defined as "data about data." It includes such information as the author, date of creation, any modifications, and the dates of any modifications.

3

emails in both paper form and electronic form in native format, and considering that Plaintiff did not request metadata, there appears to be no shortcoming in the production. See, FRCP34(b)(2).

Nor did Palar seek the Court's assistance in a timely manner; he has never moved to compel production of metadata. The first time he sought metadata was in this motion, filed months after discovery concluded and nearly a year after the initial discovery was served. If Palar wanted metadata, and if the Bank did not or could not produce it, he should not have waited until discovery was concluded and dispositive motions filed to bring the matter to the Court's attention See, *Kalis v. Colgate-Palmolive Co.*, 231 F3d 1049, 1058 (7th Cir 2000). *Rolls-Royce Corp. v Alcor Engine Co.*, 2005 WL 187557070, at *7 (SD Ind); *Native American Arts v Earthdweller Ltd*, 2002 WL 1173513, at *3 (ND Ill). It is too late now to complain about the inadequacy of discovery responses.

Finally, the Bank disputes Palar's interpretation of its letter. The switch of email host platforms resulted in the deletion of accounts on the old host server, says the Bank, not deletion of emails in their native format. Plaintiff has failed to show in any definitive fashion that metadata or emails in their native format were destroyed. The burden of showing spoliation by clear and convincing evidence rests on the party asserting it. See, *Anthony v Security Pacific Financial Services Inc.*, 75 F3d 311, (7th Cir 1996); *American Family Mutual Insurance Co. v Roth*, 2009 WL 982788, at *11 (NDIL); Plaintiff has not met that burden.

For any one of these reasons, I find that the Bank's failure to produce metadata is not sanctionable and conclude that Plaintiff is not entitled to an adverse inference on this matter.

B. HANDWRITTEN NOTES

On October 1, 2010, several bank officials met with Mr. Palar. What happened at this meeting is important to Plaintiff's theory of this case. During that meeting, the bank officials

4

took notes in handwritten form. According to the Bank, those notes were then transcribed to typewritten format; the handwritten notes were then destroyed. The Bank officials involved have testified that the handwritten notes were transcribed "in their entirety" into typewritten format. At least one summary of the meeting was prepared on October 16.

On October 18, 2010, Palar presented to the Bank a written claim for unpaid overtime wages. He inquired twice on October 19 whether any decisions had been made relating to his employment; he was told "no" both times. On October 21, the Bank notified Palar that his employment was terminated. It was sometime during the following December that Palar's counsel gave the Bank notice of his claims and requested preservation of evidence.

Plaintiff directs the Court to two separate summaries of the October 1 meeting. The first summary[3] is an undated, typewritten document (Exh. 4) that has 16 numbered sections. Each numbered section has two components. The first is a specific topic for discussion at the meeting. These 16 areas of inquiry fall into two general categories: issues that had been discussed in prior evaluations (such as Palar's computer usage) and issues that had arisen as a result of the Bank's random internal audits of employees (such as movement of cash between and among his personal accounts). The second part of each numbered section is the author's notes of Palar's response to each of the 16 issues.

The second summary to which Palar points the Court is the one referenced above, dated October 16 (Exh.3). This summary, signed by Jim Huiskamp, mentions only two of the 16 issues: Palar's computer use and cash movement in his personal accounts. With respect to his computer usage, the summary states that the meeting was used "to discover, and verify, specific websites that he had been using on a frequent basis." As to the movement of cash, the document

---

[3] This document is unsigned. It does not appear to be disputed, however, that the author if this document was Jim Huiskamp, the same person who authored the second summary.

states that Palar's activity had "raised red flags to our internal auditors." At the meeting, according to Huiskamp's document, Palar was told that Bank officials would meet with the auditors to review the matter further to verify the information Palar had given during the meeting. The document concludes that, after further review, "actions occurring within his accounts no longer possess any potential activity … which could reasonably be expected to harm the employer's property, operations, or business or … cause the employer financial liability." This particular document was not provided to Palar at the time it was made; he never saw it until it was produced during this litigation.

Comparing the two documents (and noting that more than two weeks elapsed between the October 1 meeting and the October 16 summary), Palar first points out that the undated summary contains far more detail and covers more of the 16 topics than does the dated summary. According to Palar, it is clear that the dated summary was "sanitized" to fit with the Bank's theory of the case. From that, the Court is to infer that the Bank's destruction of the handwritten notes is sanctionable, because they would have shown more details than the typewritten documents.

Under Illinois law, there is no general duty to preserve evidence; only in special circumstances does the duty arise. *Boyd v Travelers Insurance Co.*, 652 NE2d 267, 270 (Ill 1995). A two-prong test is used for determining when there is a duty to preserve evidence. *Id.* First, the court must determine whether such a duty arises by agreement, contract, statute, special circumstance, or voluntary undertaking. *Dardeen v Kuehling,* 821 NE2d 227, 236 (Ill 2004). If so, then the court must determine whether a reasonable person should have foreseen that the evidence was material to a potential civil action. If the plaintiff does not satisfy both prongs,

6

there is no duty to preserve the evidence at issue." *Id.* (internal citations omitted). The first prong is referred to as the "relationship" prong and the second prong as the "foreseeability" prong. *Id.*

In this case, only a "voluntary undertaking" would suffice to satisfy the first prong of this test, because there is no indication that the duty could arise from any other source. However, mere knowledge of potential litigation, without more, is not sufficient to give rise to a duty to preserve evidence, even where that evidence is in the possession and control of the defendant. *Gregoria v Yellow Transportation Inc.*, WL at *3 (NDIL), citing *Brunsfeld v Mineola Hotel & Restaurant Inc.*, 456 NE2d 361 (Ill App 1983). The "more" that is required to show a voluntary undertaking is a showing that the party has undertaken a particular task for the benefit of another person.

In this case, no showing has been made that the documents at issue here were created for the benefit of Palar. Nor would common sense allow such an inference. An employer has its own reasons for documenting meetings. In this case, the meeting was in significant part a fulfillment of the Bank's regulatory obligation to monitor employee finances. The summaries were created to document the Bank's compliance with its own legal obligations, in other words, the summaries were created for the Bank's own benefit, not for Palar's.

Palar has similarly failed to show any bad faith by the Bank. An employer's destruction of documents does not, without more, warrant an inference that the document would have contained information adverse to the employers' interests. *Park v City of Chicago*, 297 F3d 606, 616 (7th Cir 2002). While it is true that destruction of the notes occurred shortly before Palar was fired, it is also true that they were destroyed before there was any indication that Palar would be raising a legal claim. It was several days later when Palar first made his claim for unpaid wages, and two months later before Plaintiff's counsel formally notified the Bank of Palar's legal claim.

7

Plaintiff is incorrect when he suggests that the time lapse between the meeting and the October 16 document is suspicious. It is evident from the contents of the dated document that "further review" with the auditors had occurred after the meeting and before Huiskamp penned the dated document. There is nothing at all unreasonable or suspicious about allowing 2 weeks for the auditors to review Palar's answers and verify the information he gave about his account activity and computer usage and then to convey their conclusions to Bank management.

Finally, nothing but speculation supports Palar's position that the "transcription" omitted important information. There is sworn testimony from Huiskamp[4] that the transcription encompassed his handwritten notes in their entirety. The two documents appear to have had entirely different purposes. The transcription includes information about all 16 of the topics that were discussed; it appears intended to document the meeting itself. The dated document, on the other hand, appears to be focused on the specific "red flag" issues that created questions about Palar's finances; it appears intended to document the Bank's compliance with its regulatory obligations. These differences do not, without significantly more, allow the inference that the handwritten notes would necessarily have contained more information than the typewritten notes.

For the reasons stated, I conclude that the Plaintiff has failed to satisfy the first prong of the test. Because both prongs of the test must be satisfied for a duty to arise, it is unnecessary to address the foreseeability prong in order to conclude that the Bank had no duty to preserve the handwritten notes. Its destruction of those notes is not sanctionable.

C. ILLINOIS PERSONNEL REVIEW ACT

In 2005, Palar executed an authorization for the Bank to obtain a consumer credit report. He received a copy of that form at the time he signed it.

---

[4] Another Bank employee, T.J. Hoffman, was also part of the October 1 meeting. He too testified that the typewritten transcription of his handwritten notes was complete and accurate.

Part of the Bank's investigation into Palar's financial activities including running a credit report. When Palar requested to see his personnel file on October 1 and October 14, 2010, neither the consent form nor the credit report was in his file. Plaintiff asserts that Illinois law prohibits the Bank from now using either the authorization form or the credit report in this litigation.

Under the Illinois Personnel Review Act, employees have the right to review their personnel files. 820 ILCS 40/2. The Act further provides that: "Personnel record information which was not included in the personnel record but should have been as required by this Act shall not be used by an employer in a judicial or quasi-judicial proceeding." 820 ILCS 40/4.

The Act contains numerous exceptions to that general rule. 820 ILCS 4/10. As is pertinent here, that section of the Act states, "The right of the employee … to inspect his or her personnel records does not apply to … (g) Investigatory or security records maintained by an employer to investigate … activity by the employee which could reasonably be expected to harm the employer's property, operations, or business or could by the employee's activity cause the employer financial liability, unless and until the employer takes adverse personnel action based on information in such records." Because the credit report itself was obtained to assist the Bank in its investigation of Palar, it falls within this section. The Bank did not have to allow Palar to inspect the credit report when he inspected his personnel file *prior to his discharge* on October 21.

Plaintiff also asks the Court to bar use of the authorization form because it was not contained within the personnel file. This request borders on the absurd. Palar himself produced a copy of this authorization form in his Rule 26(a) disclosures. He admitted at his deposition that

9

he received and signed the authorization form. He was aware at and following the October 1 meeting that his finances were being investigated and that the investigation was ongoing.

Barring the use of the authorization form under those circumstances would elevate form over substance. It is obvious that Palar was aware that the authorization form existed. While the better practice may have been for the form to be included in the personnel file, the issue before this Court is *not* whether Plaintiff can state a cause of action under Illinois law for a technical violation of the Act. It is instead whether a technical violation of this Act can serve as a basis for excluding clearly relevant evidence. I do not believe that the Bank should be barred from using the authorization form under these circumstances.

### III. DEFENDANT'S MOTION

On November 9, 2012, 3 months after discovery ended and only a few days before Plaintiff's response to Defendant's motion for summary judgment was due, Plaintiff served on defense counsel Supplemental Rule 26 Disclosures. The disclosure included 47 pages of documents and identified an additional witness with discoverable information. In this Motion, Defendant asks the court to prohibit use of this information in opposition to the pending motions for summary judgment.

Parties are required, at the outset of a case, to identify individuals who may have discoverable information and to produce documents that the disclosing party may use to support its claims or defenses. FRCP 26(a)(1). Parties have a continuing duty to supplement their disclosures. FRCP 26(e). If a party fails to disclose documents or witnesses, that party is not allowed to use that evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless. FRCP 37(c)(1).

The sanction of exclusion is mandatory unless the sanctioned party can show that its failure to comply with Rule 26 was either justified or harmless. *David v Caterpillar, Inc.*, 324 F3d 851, 857 (7th Cir 2003); *Salgado v General Motors Corp.*, 150 F3d 735, 742 (7th Cir 1998), Determining whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of this Court. *David*, 324 F3d at 857. Factors that may weigh in this determination include prejudice or surprise to the party against whom the evidence is offered; the ability of the party to cure the prejudice; the likelihood of disruption to the trial; and the bad faith or willfulness involved in not disclosing the evidence earlier. *Id*.

The 47 pages of documents consist of pay stubs issued to Palar by the Bank. These documents cannot possibly be surprising or prejudicial to the Bank. This entire lawsuit is about the money Palar claims the Bank owed but did not pay him. Plaintiff's pay stubs were, after all, issued by the Bank; surely the Bank has examined its own pay records in preparing its defense in this case. The Bank deposed Palar and was free to question him about the pay he received compared to the pay he thought he deserved. There is no cognizable surprise or prejudice, and as such, there is no need to cure any prejudice.

No trial date is currently docketed for this case. Because the pending summary judgment motion could not be resolved until the instant discovery-related motions were resolved, the District Judge vacated the trial date. A trial date will be re-set once these motions and the pending summary judgment motion are resolved. The late disclosure of these documents may have been one of the causes of cancellation of the original trial date, but it is not the only reason. At any rate, that is now immaterial to the determination of whether good cause exists for the late disclosure. Letting the late disclosure stand, under these circumstances, has no impact on the Court's trial docket.

There is no evidence of willfulness or bad faith[5] on the part of the Plaintiff.

The same is not, however, true of the late disclosure of an additional witness. This witness, Michelle Riepe, was, until recently, employed as a loan assistant at the same branch bank as Palar. Plaintiff claims that Riepe was concerned about retaliation while she was still employed, so she was "basically unavailable" to him as a witness until her employment terminated.

Plaintiff knew which employees of the Bank may have witnessed pertinent events or overheard important conversations. Plaintiff could have sought her deposition if he thought she had information. Claims of fears of reprisal, had they been made in the context of a timely deposition, could then have been dealt with by the Court. Palar's failure to make any timely effort to depose Riepe renders incognizable his claim that she feared reprisals. He cannot benefit from his own failure to seek this information during discovery. Moreover, this late disclosure certainly prejudices the Bank, who is now unable to depose Ms. Riepe about the assertions she has made in her affidavit.

## IV. CONCLUSION

For the reasons discussed herein, I therefore recommend:

> (1) That Plaintiff's motion for sanctions (#34) be DENIED in its entirety;
> (2) That the Bank's motion to strike (#35) be GRANTED IN PART AN DENIED IN PART, AS FOLLOWS:
> > (a) The motion should be DENIED as to Plaintiff's late disclosure of his pay stubs; and
> > (b) The motion should be GRANTED as to Riepe's affidavit offered in opposition to the motion for summary judgment.

---

[5] The history of this case does suggest a lack of diligence on the part of plaintiff. Palar claims that his request for these documents from the Bank during discovery was ignored. Plaintiff did not, however, bring this matter to the Court's attention in a timely manner. As was the case in Plaintiff's own motion, this argument is too late.

.       The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within ten (10) working days after service of this Report and Recommendation. FRCP72(b); 29 USC 636 (b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v Zema Sys. Corp.*, 170 F3d 734, 739 (7th Cir 1999); *Video Views Inc. v. Studio 21, Ltd.*, 797 F.2d 538 (7th Cir. 1986).

ENTERED this 18th day of March, 2013.

                    s/ John A. Gorman

                    JOHN A GORMAN
              UNITED STATES MAGISTRATE JUDGE