IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BRYCE PALAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:11-cv-04039-SLD-JEH |
| | ) |
| BLACKHAWK BANCORPORATION, | ) |
| INC. d/b/a BLACKHAWK BANK & | ) |
| TRUST, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Bryce Palar sued Defendant Blackhawk Bancorporation, Inc., alleging unpaid compensation and retaliatory firing, among other claims, after Blackhawk terminated Palar in 2010. The Court granted Blackhawk summary judgment on all but one of Palar's claims, which he subsequently settled with Blackhawk. Now Palar seeks attorney's fees and costs on that settled claim pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, and the parties' agreement. For the following reasons, Palar's Motion for Attorney's Fees and Costs, ECF No. 45, is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

The Blackhawk board of directors voted to fire Palar from his junior loan officer position at Blackhawk on October 18, 2010. The next day, prior to learning of his termination, Palar demanded that Blackhawk compensate him alleged unpaid overtime wages he earned while coaching the Orion High School baseball team, a duty he claims was a condition of his employment.

---

[1] The Court's Order of September 25, 2013, ECF No. 44, provides an in-depth account of the facts of this case. That Order—except where otherwise indicated—is the source of the background material presented here.

1

After Palar learned of his termination and could not reach a settlement with Blackhawk on severance pay, he brought the instant suit, alleging nine claims for relief under four statutes: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the IWPCA; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et* seq.; and the Illinois Personnel Record Review Act ("IPRRA"), 820 ILCS 40/1 *et seq.* The nine claims were for: under the FLSA, (1) unpaid overtime for coaching time and (2) termination in retaliation for filing an FLSA complaint for unpaid overtime; under the IWPCA, (3) interest on his delinquent wages, (4) failure to pay "wages" for coaching time, and (5) failure to compensate for unused personal days and his final day of employment; under the FCRA, (6) failure to make appropriate disclosure after conducting an investigative consumer report, (7) adverse action based on a consumer report without providing a copy and description of rights, and (8) failure to provide due process as a credit reporting agency; and under the IPRRA, (9) failure to grant Palar access to his full personnel file.

The Court granted Blackhawk summary judgment on all but Palar's claim for interest on his delinquent wages. Because Palar was fired on October 21, 2010, and Blackhawk admitted to failing to send Palar his final compensation check until around July 2011, the Court denied Blackhawk summary judgment as to whether Palar was timely paid under the IWPCA. Sept. 25, 2013 Order 13; *see* 820 ILCS 115/5. The statute entitles an employee to interest on unpaid final compensation at 2% per month delayed, along with costs and reasonable attorney's fees. 820 ILCS 115/14(a).

Blackhawk subsequently paid Palar the full amount of interest available on his IWPCA claim, $261.00, and also promised to "pay costs and reasonable attorney's fees as may be allowed by the court in regard to Plaintiff's pursuit of his [IWPCA] claim." Pl.'s Mot. Att'y Fees, Ex. D at 1, ECF No. 45-5; Def.'s Resp. to Mot. Att'y Fees 2, ECF No. 46. In the instant motion, Palar argues that

he is entitled to attorney's fees for 135.30 hours at a rate of $400 per hour, reduced by 50% to reflect that part of the legal work advanced the unsuccessful claims, for a total of $27,060.00. Pl.'s Mot. Att'y Fees, Ex. G at 3, ECF No. 45-8; Pl.'s Mem. In Supp. Mot. Att'y Fees 6. He also requests $1,739.75 in costs: the $350.00 case filing fee plus $462.05 and $927.70 for a reporting service for the depositions of Palar and W. Gerard Huiskamp, James Huiskamp, and Thomas J. Hoffman, respectively. Blackhawk counters that, if Palar is entitled to attorney's fees and costs at all, both requested amounts should be significantly reduced to reflect the defeat of the majority of Palar's claims. *See, e.g.*, Def.'s Resp. to Mot. Att'y Fees 5.

## DISCUSSION

Blackhawk does not challenge Palar's ability to seek attorney's fees and costs under the IWPCA on the basis of their settlement. *Cf. Maher v. Gagne*, 448 U.S. 122, 129 (1980) (noting in the civil rights statutory context that "[t]he fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees").

### I. Lodestar Method Applies

Blackhawk argues that, in light of the Court's rejection of all his other claims, the $261.00 settlement of Palar's IWPCA interest claim represents only a de minimis victory, and therefore the lodestar method does not apply to calculation of fees. Def.'s Resp. to Mot. Att'y Fees 2.

#### A. Legal Framework

The Federal Rules of Civil Procedure provide that a party may recover its attorney's fees if provided for in a judgment, statute, rule, or other authority. Fed. R. Civ. P. 54(d)(2)(B)(ii). The IWPCA provides that, where an employee is not timely paid wages, final compensation, or wage supplements as required by the IWPCA, "[i]n a civil action, such employee shall also recover costs

3

and all reasonable attorney's fees." 820 ILCS 115/14(a). The IWPCA's purpose is "to ensure employees receive all earned benefits upon leaving their employer," and "the evil it seeks to remedy is the forfeiture of any of those benefits." *Kim v. Citigroup, Inc.*, 856 N.E.2d 639, 646 (Ill. App. Ct. 2006) (quoting *Swavely v. Freeway Ford Truck Sales, Inc.*, 700 N.E.2d 181, 189 (Ill. App. Ct. 1998)). Illinois attorney fee statutes are strictly construed. *Brewington v. Dep't of Corr.*, 513 N.E.2d 1056, 1062 (Ill. App. Ct. 1987).

The U.S. Supreme Court has held that a plaintiff who wins only nominal damages in a civil rights suit is still a "prevailing party" eligible to receive reasonable attorney's fees; however, "reasonable" in that context usually means zero. *Aponte v. City of Chicago*, 728 F.3d 724, 726–27 (7th Cir. 2013) (citing *Farrar v. Hobby*, 506 U.S. 103, 113, 115 (1992)). A reasonable fee for such a "technical or de minimis" victory must reflect: (1) the difference between the amount sought and recovered, (2) the significance of the issue prevailed upon relative to all issues litigated, and (3) whether the case achieved some public benefit. *Id.* at 727 (citing *Farrar*, 506 U.S. at 120–22 (O'Connor, J., concurring)). In such a case, therefore, the traditional lodestar for determining attorney's fees is inapplicable. *Aponte*, 728 F.3d at 727.

Although *Farrar* addressed attorney's fees under 42 U.S.C. § 1988, federal courts have applied its alternative considerations for de minimis victories outside the civil rights context. *See, e.g., Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999) (holding that plaintiff's recovery of only 7% of his initial demand in contract, fraud, and RICO suit undermined his claim to full attorney's fees); *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (rejecting application of *Farrar* in Employee Retirement Income Security Act suit because party recovered entire amount of claimed deficiency). Illinois courts also consider *Farrar* when applying Illinois

4

statutory attorney's fees provisions. *See, e.g., Doe v. Flava Works, Inc.*, 2014 IL App. (1st) 121491-U, 2014 WL 470638, at *4–*5 (Ill. App. Ct. Feb. 4, 2014) (upholding denial of attorney's fees where plaintiff achieved only "de minimis success" in Illinois Right to Publicity Act suit); *Berlak v. Villa Scalabrini Home for the Aged, Inc.*, 671 N.E.2d 768, 771–72 (Ill. App. Ct. 1996) (distinguishing *Farrar* in upholding attorney's fees award to Illinois Nursing Home Care Reform Act plaintiff); *see also Brewington*, 513 N.E.2d at 1062 ("In the absence of Illinois cases on issue, we may look to analogous [f]ederal decisions.").

**B. Analysis**

The parties provide no case law interpreting the IWPCA attorney's fees provision on this issue, nor can the Court independently find any.[2] However, an Illinois court's interpretation of a similar Illinois statutory fee provision indicates that *Farrar* is not applicable here.

At the outset, the Court notes that *Farrar*—although its principles have been applied broadly since their birth in the civil rights context—arises from different statutory language. Section 1988 provides that a court "may allow the prevailing party" reasonable attorney's fees. 42 U.S.C. § 1988(b). The IWPCA, by contrast, states that an employee "shall recover" attorney's fees and costs. 820 ILCS 115/14(a). Although a requirement that the plaintiff prevail on the IWPCA claim is arguably implicit in the structure of 820 ILCS 115/14(a), the absence of an express "prevailing" prerequisite, coupled with the use of "shall" versus "may," suggests a relatively stronger statutory intent that an IWPCA plaintiff (compared to one suing under § 1983) receive fees.

---

[2] This is unsurprising given the relatively short existence of this provision. The attorney fee provision was added to the IWPCA in a July 30, 2010 amendment. Sec. 14(a), P.A. 96-1407 (2010); *Sanchez v. Haltz Const., Inc.*, No. 09 C 7531, 2012 WL 13514, at *5 (N.D. Ill. Jan. 4, 2012) (noting that the Illinois Legislature "recently amended the IWPCA to permit plaintiffs to recover attorney's fees").

5

The presence of "shall" and absence of "prevailing" makes 820 ILCS 115/14 similar to the Illinois Nursing Home Care Reform Act ("NHCRA") attorney's fees provision, 210 ILCS 45/3-602. That section provides: "The licensee shall pay the actual damages and costs and attorney's fees to a facility resident whose rights, as specified [in this Act], are violated." *Id.* Courts interpreting this provision have held that "shall" indicates mandatory legislative intent. *Rath v. Carbondale Nursing & Rehab. Ctr., Inc.*, 871 N.E.2d 122, 129 (Ill. App. Ct. 2007); *Berlak*, 671 N.E.2d at 771. Such a provision should not be interpreted permissively if a person's right or benefit depended on giving the provision a mandatory meaning. *See Berlak*, 671 N.E.2d at 771.

The *Berlak* Court, interpreting the NHCRA attorney's fees provision as a matter of first impression, looked for guidance to federal civil rights case law, but ultimately rejected application of the *Farrar* de minimis victory doctrine. 671 N.E.2d at 771–72. *Berlak* noted that the NHCRA's aim is to encourage residents to seek legal redress against nursing homes that violated their rights, and that many Act violations would "yield little in the way of actual monetary damages." *Id.* at 772 (quoting *Harris v. Manor Healthcare Corp.*, 489 N.E.2d 1374, 1383 (Ill. 1986)). Applying *Farrar* to limit attorney's fees in proportion to damages recovered would undermine legislative intent by discouraging residents' enforcement of the Act, *Berlak* reasoned. *Id.* at 771–72; *see also Grove v. Huffman*, 634 N.E.2d 1184, 1190 (Ill. App. Ct. 1994) (declining to apply *Farrar* to Illinois Consumer Fraud and Deceptive Business Practices Act claim because limiting fees based on degree of plaintiff's success "would discourage plaintiffs with valid claims from pursuing relief under the Act simply because the attorney fees may exceed the recovery").

Absent a ruling from the Illinois Supreme Court, the Court looks for guidance in interpreting the IWPCA to Illinois appellate courts decisions. *See Clarin Corp. v. Mass. Gen. Life. Ins. Co.*, 44

6

F.3d 471, 474 (7th Cir. 1994) (noting that without "persuasive indications" that high court would rule differently, decisions of state intermediary courts control federal interpretation of state law). The IWPCA fee provision parallels that of the NHCRA in all material aspects. As noted, both provisions have a mandatory tone; they also share a remedial purpose. *See Kim*, 856 N.E.2d at 646. Indeed, the IWPCA aims to ensure employees "receive *all* earned benefits" and to prevent "forfeiture of *any* of those benefits." *Id.* (emphasis added). By providing causes of action for employees to receive compensation for even a few unused vacation days, or to collect 2% interest per month on delayed compensation, the IWPCA, like the NHCRA, also creates many violations with potentially low monetary value. *See* 820 ILCS 115/5, 14(a). Limiting attorney's fees based on the relative size of damage figures would thus harm employees' ability to obtain counsel and reduce the likelihood of private suits—which the IWPCA expressly contemplates, *see* 820 ILCS 115/11—to enforce "any" and "all" IWPCA violations, *see Kim*, 856 N.E.2d at 646. These parallels with the NHCRA indicate that *Farrar*'s limiting doctrine should similarly not apply to attorney's fees awarded under 820 ILCS 115/14(a).

Accordingly, Palar's IWPCA attorney's fees will be calculated using the lodestar method. *See DeliverMed Holdings, LLC v. Schaltenbrand*, No. 10-cv-684, 2012 U.S. Dist. LEXIS 169353, at *3–7 (S.D. Ill. Nov. 29, 2012) (applying lodestar method to calculate IWPCA attorney's fees where most of plaintiff's claim were defeated), *aff'd in part and rev'd in part on other grounds,* 734 F.3d 616 (7th Cir. 2013) .

**II. Calculation of Fees Under Lodestar Method**

Blackhawk maintains that Palar's fee request should be reduced because: (1) the hourly rate is unjustifiably high; (2) the hour total includes hours spent on Palar's other, unsuccessful claims;

7

(3) Palar obtained limited success overall; and (4) his IWPCA claim was relatively simple to litigate. Def.'s Resp. to Mot. Att'y Fees 6.

### A. Legal Framework

Under the lodestar method, a court multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010).[3] The court may increase or decrease that figure to reflect factors including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Id.* (quoting *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.,* 574 F.3d 852, 856–57 (7th Cir. 2009).[4] "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (quoting *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999).

A court, however, should not "eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive to the court." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996) (citations and internal quotation marks omitted). It must provide

---

[3] The parties cite only federal cases regarding the lodestar method. The Court need not determine the propriety of their tacit assumption that federal principles govern an award pursuant to a state statute, however, because Illinois law similarly permits courts to calculate attorney's fees using the lodestar method. *Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman,* 993 N.E.2d 1013, 1029 (Ill. App. Ct. 2013); *see, e.g., DeliverMed Holdings, LLC*, 2012 U.S. Dist. LEXIS 169353, at *5–6 (applying federal principles to lodestar calculation of attorney's fees pursuant to IWPCA).

[4] These considerations speak to the major concerns reflected in the 12 factors district courts may consider in reducing an attorney's fees award to reflect a partial success. *See Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir. 1995). Those factors are: "the time and labor required, the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the 'undesirability' of the case; the nature and length of the professional relationship with the client; and awards in similar cases." *Id.* (citing *Hensley*, 461 U.S. at 430 n.3).

"a concise but clear explanation of its reasons" for the reduction. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999) (citation and internal quotation marks omitted).

The reasonably hourly rate should reflect the market rate, which is the rate "that lawyers of similar ability and experience in the community charge their paying clients for the type of work in question." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (citation and internal quotation marks omitted). The fee applicant bears the burden of proving the market rate. *Id.* The presumptive market rate is the attorney's actual billing rate for comparable work; where this cannot be determined, the applicant can meet her burden by submitting affidavits from similarly experienced attorneys attesting to the rates they charge clients for similar work, or by submitting evidence of fee awards the applicant's attorney has received in similar cases. *Id.* Once the applicant makes such a showing, the burden shifts to her opponent to demonstrate why the Court should award a lower rate. *Id.*

Under *Hensley*, a party may not recover attorney's fees for hours spent on unsuccessful claims "distinct in all respects" from the successful claims. *Bryant v. City of Chicago*, 200 F.3d 1092, 1101 (7th Cir. 2000) (quoting *Spanish Action Comm. v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir. 1987)). Where both successful and unsuccessful claims "involve a common core of facts or are based on related legal theories," time spent on related, unsuccessful claims may still be compensable. *See id.* (quoting *Spanish Action Comm.*, 811 F.2d at 1133). Claims are related where they "seek relief for essentially the same course of conduct." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983). The rationale is that, with related claims, work performed on unsuccessful claims nevertheless may be deemed to contribute to an ultimate victory; additionally,

9

litigants should not be penalized for pursuing multiple alternative theories if a court only awards relief based on one. *See Hensley*, 461 U.S. at 435.

When reducing a fee to reflect a partial success, a district court has discretion to identify specific hours to be eliminated or "simply reduce the award across the board." *Mary Beth G.*, 723 F.2d at 1279 (quoting *Spanish Action Comm.*, 811 F.2d at 1133). The party requesting attorney's fees has the burden of establishing hours expended and "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," such as by identifying the general subject matter of his hour entries. *Hensley*, 461 U.S. at 437 & n.12.

Attorneys are entitled to compensation for hours spent litigating the award of their fees. *Kurowski v. Krajewski*, 848 F.2d 767, 777 (7th Cir. 1988). However, the time spent litigating attorney's fees should not be disproportionate to that spent on the merits. *See, e.g., Spegon v. Catholic Bishop of Chi.,* 175 F.3d 544, 554 (7th Cir. 1999) (upholding reduction of attorney fees awarded for time spent on fee issue from 9 to 1.6 hours where attorney spent almost equal time on litigating fees and merits); *Ustrak v. Fairman*, 851 F.2d 983, 987--88 (7th Cir. 1988) (reducing attorney's fees awards by two-thirds where attorneys spent almost 15 minutes on attorney's fees per each hour litigating the merits). A court must determine "whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case." *Spegon*, 175 F.3d at 554 (upholding district court's reliance on *Kurowski*'s determination that 1.6 hours spent preparing a fee request is reasonable).

B. Analysis

Under the lodestar method, Palar argues that he is entitled to costs of $1,739.75 and attorney's fees of $27,060, which represents 135.30 hours at a rate of $400 per hour, reduced by 50%. *See* Pl.'s Mot. Att'y Fees 5–6 & Ex. G.

1. Reasonability of Hourly Rate

In support of a $400 hourly rate, Palar offers the affidavit of his attorney, Dorothy O'Brien, who claims to have almost 30 years of legal experience, mostly in employment law. Pl.'s Mem. in Supp. Mot. Att'y Fees 5. She declares that nearly all of her cases are performed on a contingency basis, but in her most recent fee award, a federal court in the Eastern District of New York in 2012 awarded O'Brien $400 per hour.[5] *See* Pl.'s Mot. Att'y Fees, Ex. F, ECF No. 45-7. Palar also offers an affidavit by Des Moines employment-law attorney Thomas Newkirk, first filed in an unrelated 2011 case in the Southern District of Iowa.[6] Pl.'s Mem. in Supp. Att'y Fees 5; Pl.'s Mot. Att'y Fees, Ex. E, ECF No. 45-6. Newkirk, acknowledging that O'Brien has more years of experience than he, attests to (1) a relative paucity of employment lawyers in the region to provide comparable rates; (2) charging $425 per hour in his own cases and recently receiving an attorney's fees award of $425; and (3) knowledge that another area attorney, Roxanne Conlin—"who has experience more consistent with that of Dorothy O'Brien"—charging over $600 per hour. *Id.* As a result, Newkirk maintains that a reasonable hourly rate in Iowa for O'Brien would be $400 to $500. *Id.*

Claiming it better approximates local market rates, Blackhawk cites a 2010 Northern District of Illinois case that found hourly rates in FLSA cases in the Northern District to range from $245 to

---

[5] The Eastern District of New York case is *Artica v. J.B. Custom Masonry & Concrete*, No. 1:2009-cv-03796.

[6] The Southern District of Iowa case is *Cinadr v. BE&K Constr. Co., LLC*, No. 3:11-cv-00010.

$345 per hour. Def.'s Resp. to Mot. Att'y Fees 6–7 (citing *Lizak v. Great Masonry, Inc.*, No. 08-C-1930, 2010 U.S. Dist. LEXIS 76568, at *7 (N.D. Ill. July 29, 2010)). However, a more recent Northern District case undertook a similar survey, and noted a range of $275 to $450 per hour for lead attorneys, with cases within the last year registering the $400-plus rates. *See Johnson v. G.D.F., Inc.*, No. 07 C 3996, 2014 WL 463676, at *20–21 (N.D. Ill. Feb. 5, 2014) (finding $425 to be a reasonable hourly rate for attorney with 42 years of FLSA experience). Aside from the outdated survey in *Lizak*, Blackhawk provides no other evidence to establish the local market rate.

While an Eastern District of New York rate bears relatively small probative value for the local legal market, O'Brien's and Newkirk's affidavits support the reasonableness of $400 per hour in the nearby Iowa market. Blackhawk's sole rebuttal, based on Northern District of Illinois rates, is undermined by recent cases from that District with attorney's fees ranging above $400 per hour. Blackhawk therefore fails to carry its burden of showing why the Court should award a lower rate than that supported by Palar's evidence. *See Small*, 264 F.3d at 707. Whether or not $400 per hour is in general the local market rate, given Blackhawk's failure to rebut this figure, the Court finds that this rate is reasonable in the context of this case.

**2. Number of Hours in Light of Degree of Success and Complexity of Claim**

Blackhawk does not dispute that O'Brien worked her reported 153.30 hours on this case, but maintains that many of these hours were spent on Palar's unsuccessful claims, and therefore should not be compensated. Def.'s Resp. to Mot. Att'y Fees 6. Blackhawk also argues to reduce Palar's request on the grounds that he achieved only marginal success and his sole successful claim was "simple." *Id.*

Palar sought relief for nine claims overall, and succeeded on only his IWPCA claim for interest on delinquent wage payments. None of Palar's other claims concern delayed payment of his undisputed final compensation or arise from 820 ILCS 115/14 or any comparable provision awarding interest for delinquent compensation. Palar's sole successful claim therefore does not seek relief for the same conduct as the eight unsuccessful ones. *See Mary Beth G.*, 723 F.2d at 1279. As they are "distinct in all respects," the hours spent on the unsuccessful claims must be deducted. *See Bryant*, 200 F.3d at 1101.

Unfortunately, O'Brien's hours invoice does not consistently divide her work by particular legal claim. *See* Pl.'s Mot. Att'y Fees, Ex. G, ECF No. 45-8. Acknowledging that time was spent on the other claims, Palar argues for a 50% reduction, although he provides no formula for arriving at this figure. Pl.'s Mem. In Supp. Mot. Att'y Fees 6. A mere 50% reduction, however, would not reflect the degree of partial success and the victorious claim's separability from the bulk of the issues. It would also ignore the lack of complexity of this claim, and the case overall. *See Gastineau*, 592 F.3d at 748. The parties' briefing of the issue was minimal, and extensive argument was not necessary: the Court only had to look at the date Blackhawk finally compensated Palar to determine that the payment was delinquent and therefore his statutory interest claim survived summary judgment. *See* Sept. 25, 2013 Order 13, ECF No. 44. Moreover, the major dispute in this case centered on Palar's FLSA claims, which, courts have noted, are not typically difficult to litigate. *See, e.g., Small*, 264 F.3d at 707–08; *Goodale v. George S. May Int'l Co.*, No. 09 C 7848, 2010 WL 2774013, at *3 (N.D. Ill. July 14, 2010). The successful IWPCA claim was even less complex than Palar's failed FLSA claims, counseling in favor of an even lower fee award.

13

A Southern District of Illinois court addressed a similar scenario, in which one party, Swift, requested attorney's fees when he prevailed on an IWPCA claim for unpaid compensation and interest despite failure on nearly all the other claims in his seven-count complaint. *DeliverMed Holdings, LLC*, 2010 U.S. Dist. LEXIS 169353, at *7–9. The *DeliverMed* Court noted that the IWPCA issue was never seriously disputed, required little time to resolve, and "was not a difficult claim." *Id.* at *9. Observing that Swift bore the burden of showing that nonspecific hour listings that could relate to a number of claims "actually benefitted" the IWPCA claim, the *DeliverMed* Court found that Swift failed to exercise proper care in omitting attorney hours that did not further his IWPCA claim. *Id.* at *10–11. Accordingly, the court reduced the fee to a mere fraction of Swift's request to reflect both the percentage of the case the Court found relevant to the IWPCA claim and Smith's merely partial success on that claim. *See id.* at *11.

Not only does Palar's suggested 50% reduction not reflect his marginal degree of success in an uncomplicated case, but awarding fees based on this arbitrary figure would constitute the unprincipled "eyeballing" this Court may not engage in. *See People Who Care*, 90 F.3d at 1314. Because Palar has failed to remove hours unattributable to his IWPCA claim from his attorney's invoice, the Court—like *DeliverMed*—must determine what portion of O'Brien's hours relate to the IWPCA claim. Because the Court may not neatly prorate the number of hours according to the ratio of successful to total claims, *see Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010) (citing *Hensley*, 461 U.S. at 435 n.11), the Court has no recourse but to draw inferences from O'Brien's hours invoice. Based on the brief line item descriptions, 14.9 hours appear primarily related to the successful IWPCA claim. Of the remaining hours that reasonably could have related to advancing

the IWPCA claim, the Court finds that compensating 9.7 of those hours appropriately reflects Palar's overall level of success.

However, O'Brien appears to have spent at least 12.2 of these hours litigating the attorney's fees issue. This time accounts for nearly half of the 24.6 overall compensable hours, far exceeding the 15-minutes-per-hour ratio between fee hours and merits hours recognized as disproportionate by the Seventh Circuit in *Ustrak*. *See* 851 F.2d at 987. Accordingly, the Court reduces the 12.2 hours to the 1.6 hours recognized as reasonable for requesting attorney's fees. *See Spegon*, 175 F.3d at 554; *Kurowski*, 848 F.2d at 776.

The Court finds that Palar's attorney reasonably expended 14 hours on his successful IWPCA claim. The Court therefore awards Palar attorney's fees for 14 hours at $400 per hour, which equals a sum of $5,600.00. Even after substantial reductions to reflect Palar's only partial success, this amount still dwarfs the $261.00 in IWPCA interest Palar won through the settlement. However, other justifications support the award's size. Granting Palar a meaningful fees recovery vindicates his right to timely final compensation under the IWPCA and serves to deter employers from delaying wage payments without justification. *See Ustrak*, 851 F.2d at 989 (noting that vindication of rights violation and general deterrent effect help justify award of attorney's fees greatly exceeding damages amounts).

**III. Costs**

Blackhawk additionally argues that Palar's requested $1,739.75 in costs should be reduced to the $350.00 suit filing fee because Palar's other costs—$1,389.75 for transcription of the four depositions—were unnecessary to advance the IWPCA claim. Def.'s Resp. to Mot. Att'y Fees 10. Palar does not address the relevancy of the deposition costs. Facts related to the IWPCA issue were

discussed in Palar's deposition; indeed, Blackhawk relied on Palar's deposition statements in erroneously arguing that it had fully compensated Palar under the IWPCA. *See* Def.'s Mot. Summ. J. 35 & Ex. A at 38, ECF No. 28. The parties did not refer to the other depositions, however, in arguing that issue on summary judgment. In the absence of evidence that the three other depositions had any bearing on the successful IWPCA claim, the Court will not award Palar their costs. Accordingly, Blackhawk must reimburse Palar's litigation costs of $350.00 for the filing fee and $462.05 for Palar's deposition, for a total of $812.05.

## CONCLUSION

Plaintiff Bryce Palar's Motion for Attorney's Fees and Costs, ECF No. 45, is GRANTED IN PART and DENIED IN PART. Pursuant to 820 ILCS 115/14(a), the Court awards Plaintiff attorney's fees in the amount of $5,600.00 and costs in the amount of $812.05. The Clerk is directed to enter judgment and close the case.

Entered this 19th day of August, 2014.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
